UNION FREE SCHOOL DISTRICT No. 11 OF THE TOWN OF URBANA, STEUBEN COUNTY, N. Y., Plaintiff, *v.* THE COUNTY OF STEUBEN and Others, Defendants.

Supreme Court, Steuben County, March 28, 1942.

*Annabel & Wightman,* for the plaintiff.

*James S. Drake, Jr., County Attorney,* for the defendants.

NATHAN D. LAPHAM, Official Referee.   This action is brought by a school district of the town of Urbana in Steuben county to recover from the defendants the sum of $5,235.88 which represents taxes levied by the trustees of the school district from 1931 to 1940 that have remained uncollected.   The properties on which the taxes were assessed have been sold at tax sales conducted by the county and they have been purchased on such sales by the county. In some instances the county has perfected its title by a tax deed. In other instances it holds only a tax certificate.   After these tax

sales the county removed the properties from the tax rolls and carried the parcels in a separate part of the rolls as county owned property. The lands were still included by the assessors in the roll and a valuation was still attached to them but these were excluded from the aggregate assessed valuation of the total tax roll.

By stipulation the issues have been narrowed to the fundamental question whether the county of Steuben must pay to the plaintiff school district the unpaid school taxes on properties acquired by the county on tax sales although such properties have been erased from the rolls by the county board of supervisors. It has been stipulated that it is immaterial in so far as the liability of the county to pay these taxes is concerned whether the county has a tax deed or holds only a certificate of sale.

During each of the years since 1931 the plaintiff held an annual school meeting and voted a tax for each of these years. The trustees apportioned the tax on all the real property in the school district, prepared a tax list and attached their warrant for the collection of the taxes within thirty days after September first in each year. The warrant was delivered to the district tax collector and, after the expiration of the time limited by the warrant and any renewal, the collector made his return to the trustees which showed the amount of the school taxes that remained unpaid. In the month of April of the next year the plaintiff transmitted this account to the board of supervisors of the county. The supervisors did not include the returned school taxes which are sought to be recovered here in its annual tax levy made on December thirtieth of each year after the return of the unpaid taxes was made by the trustees of the school district. The parcels of property against which these uncollected taxes were assessed were sold at county tax sales and were purchased by the county. They have not been redeemed by the owners or sold by the county and they have been deleted from the tax rolls of the tax districts in the county.

The county contends that it is under no liability to pay the returned school taxes on property which it owns which has been taken from the tax rolls under subdivision 2 of section 50 of the Tax Law, or at least that the duty to pay these taxes is dormant until the property is either redeemed by the owner or sold by the county.

The pertinent statutes are article 15 of the Education Law and subdivision 2 of section 50 and subdivision 3 of section 4 of the Tax Law. Subdivision 1 of section 411 of the Education Law provides in part: " School district taxes shall be apportioned by

the trustees upon all real estate within the boundaries of the district which shall not be by law exempt from taxation * * *."

The Tax Law, which in extent occupies most of the field of taxation, defines the property which is exempt from taxation. Section 3 of the Tax Law provides in part that " All real property within this State is taxable unless exempt from taxation by law." Subdivision 3 of section 4 of the Tax Law specifically exempts property of a municipal corporation held for a public use. As a result of an amendment to subdivision 3 of section 4 in 1939 (Laws of 1939, chap. 853), property of a municipal corporation acquired by tax deed or on a tax foreclosure shall be deemed to be held for a public use for a period of three years from the date of the deed and shall during that period be free from taxation. The property, however, is taxable for school purposes and for special and local improvements which benefit the property.

These general statutes are to be read in the context of sections 435 and 436 of the Education Law. Section 435 directs the county treasurer to pay to a school district out of any moneys in the county treasury raised for contingent expenses the amount of the taxes which have been returned unpaid by the school district collector and, if there are no moneys in the treasury which are available for this purpose, the board of supervisors must pay to the treasurer of the school district the amount of the unpaid school tax which the board has relevied in compliance with the command of section 436 of the Tax Law.

In the face of these statutes, the county cannot take refuge behind the shield of subdivision 2 of section 50 of the Tax Law in asserting that its property is free from the school tax. Section 50 deals exclusively with the equalization of valuations in the different tax units of the county. The right to exclude property purchased by the county at tax sales under subdivision 2 of this section is limited to the exclusion of the property from the tax rolls of the several tax districts of the county. By statutory definition and by decision school districts are not tax districts under the Tax Law. (Tax Law, § 2; *Common School District No. 3* v. *County of Chemung*, 160 Misc. 477.) The immunity which the statute throws around county owned property is a limited immunity. It does not reach to freedom from taxation for school purposes. The privilege of exemption, moreover, cannot be claimed merely because the property is owned by the county. Land which has merely been purchased at a tax sale by the county and is not being actually used for any governmental purpose is not held for a public use. (*Village of Watkins Glen* v. *Hager*, 140 Misc. 816; affd., 234 App. Div. 904.) It is clear at least that from the time of the

amendment to subdivision 3 of section 4 of the Tax Law on June 13, 1939, property acquired by the county by purchase at tax sales is still liable for assessments for school taxes. This amendment did not create a liability where none existed before. It clarified and fixed a liability already shaped in a definite form by statute and by decision.

The State uses the county as an agency for the school district in the collection of school taxes. (*Village of Kenmore* v. *County of Erie*, 252 N. Y. 437, 442.) The district ordinarily has no power to enforce the payment of its taxes by the sale of real property. The trustees may sue to recover the tax (Education Law, § 432), but this remedy is uncertain and often powerless. It has been the policy of the State to lay upon the county the burden of assisting a school district in collecting its tax money in order that the district may discharge in an efficient manner the educational functions intrusted to it. So vital does the State regard the duty of educating its people through the school districts that it places the risk of failure to collect the school taxes on the county and not on the district.

The power of the county to borrow money, moreover, is not so severely limited as the power of the school district (Education Law, § 480), and on the stronger financial unit the Legislature has thrust the duty of meeting the deficiencies in the collection of school taxes. The responsibility of the school district for the payment of taxes ends when the account and certificate of the district tax collector are transmitted by the trustees to the county treasurer. (Education Law, § 434.) When the tax is relevied by the supervisors it becomes a part of the general county tax. (*Matter of Wadhams*, 249 App. Div. 271.) The practice of meeting deficiencies in the collection of taxes of subordinate political subdivisions by compelling payment by a larger taxing unit has been long established and entrenched in our system of government. (*Town of Amherst* v. *County of Erie*, 260 N. Y. 361; *Town of Irondequoit* v. *County of Monroe*, 158 Misc. 123; affd., 254 App. Div. 933; *Common School District No. 3* v. *County of Chemung*, *supra*.) In the *Common School District No. 3* case (*supra*) Justice PERSONIUS held that Chemung county was liable for the payment of unpaid school taxes on property which the county had purchased at tax sales and which had been stricken from the tax rolls under subdivision 2 of section 50 of the Tax Law. The defendants contend, however, that this decision has no force because section 1 of article 8 of the State Constitution adopted by the people in November, 1938, swept away the mandatory provisions of the Education Law on which the decision was based. I believe, on

the contrary, that section 1 of article 8 of the State Constitution confirmed the validity of the custom and the procedure already adopted in response to the statutes and to the decisions. Section 1 of article 8 provides in part that " nor shall any county, city, town, village or school district give or loan its credit to or in aid of any individual, or public or private corporation or association, or private undertaking, but this provision shall not prevent a county from contracting indebtedness for the purpose of advancing to a a town or school district, pursuant to law, the amount of unpaid taxes returned to it."

This is a clear recognition of an absolute and unqualified obligation on the part of the county to pay to a school district its uncollected taxes. The history of the origin of section 1 of article 8 and the progressive steps in its formulation in the Constitutional Convention show conclusively that the delegates added the proviso to keep intact the established system of the use of the credit of one political subdivision by a town or school district in the interests of the greater good of all the citizens in the State. In *Union Free School District* v. *Town of Rye* (280 N. Y. 469) the Court of Appeals held that the borrowing of money by the town to enable it to pay to the school district its uncollected school taxes did not constitute a loan of its credit in violation of section 1 of article 8 of the State Constitution. In the course of his opinion in that case, Judge LEHMAN referred to the purpose behind the proviso and to its effect in these words:

" The declared intention of draftsmen of these provisions, manifested in notes appended to their proposals, was to prevent, perhaps with exceptions thereafter to be inserted, the use of the credit of one unit to supplement the credit of another unit. Only in the saving clause thereafter added can suggestion be found that provision devised for so sound a purpose might without that clause be construed in manner which would disrupt our system of taxation under which the risk of failure to collect all taxes for governmental purposes may be placed upon a single governmental unit " (p. 478).

" In counties other than Westchester the towns and the school districts have, as already pointed out, power to levy and collect their own taxes though ultimate duty to pay to towns or school districts, taxes which they fail to collect, rests upon the counties. Perhaps in such case payment by the counties might be regarded as an ' advance,' and without the saving clause there might be question whether the established system might be continued " (p. 479).

It is significant that several proposals to relieve a county of liability for uncollected school taxes were made at the Convention

but they were not adopted and submitted to the people in the general elections of 1938. (New York State Constitutional Convention Committee — 1938 [Amendments Proposed to New York Constitution, 1895–1937], vol. 2, pp. 766 *et seq.* See Ehrlich, Nunan and Williams proposals.)

Exemption from taxation is a creature of statutory law. It must be defined in precise and definite terms and it cannot successfully rest on ambiguities or on conjectures as to the policies behind the statutes. (*County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126; affd., 279 N. Y. 560.) An exemption in general terms does not save property from taxation for local purposes or for special improvements. Lands within a village which have been purchased by the county at a tax sale are not immune from the burden of village taxes (*County of Herkimer* v. *Village of Herkimer, supra*), and a school district is liable for the cost of assessments for street improvements. (*Board of Education* v. *Town of Greenburgh,* 277 N. Y. 193.) The same principle of withholding immunity of a tax unit from taxes levied for educational and local improvements has been carried expressly now by amendment into subdivision 3 of section 4 of the Tax Law which relieves municipally-owned property from the payment of general taxes but subjects it to a levy for school or local improvement taxes.

The liability of the county for uncollected school taxes on property purchased by the county at tax sales which remains unredeemed, and the propriety of assessing county-owned property for school purposes has been recognized by the administrative officers of a great majority of the counties of the State, according to letters from county treasurers which have been attached to the plaintiff's brief. These are not decisive or controlling, of course, on the issues here, but they reflect an administrative interpretation of the governing statutes which is entitled to great weight in the construction of the law. (*Town of Amherst* v. *County of Erie,* 260 N. Y. 361, 369, 370; *Matter of 440 E. 102nd St. Corp.* v. *Murdock,* 285 id. 298, 309.)

If the county were permitted to free all property in a school district purchased by it at a tax sale from the payment of school taxes, a heavy burden would be thrust on the other taxpayers in the school district. There would be inescapably a lack of balance between benefits and burdens and grave inequality of taxation. The educational functions of the school district would be placed in jeopardy. It is these results which the Education Law seeks to avert.

The plaintiff is entitled to judgment against the county of Steuben in the total sum of $5,233.88, together with one bill of costs and

disbursements. Interest on the various items comprising this amount shall be at the rate of six per cent to July 1, 1939, and at the rate of four per cent from July 1, 1939, to date. The defendants are required to take whatever official steps may be necessary to pay, or cause to be paid, to the plaintiff these amounts for which judgment is awarded.

The objections interposed by the plaintiff to the evidence offered by the defendants on which decision was reserved are severally overruled, with exceptions.