CITY OF TRAVERSE CITY *v.* TOWNSHIP OF EAST BAY.

TAXATION—MUNICIPAL CORPORATIONS—POWER RIGHTS—EXEMPTION.
   Where a city purchased of an existing power company a
   plant and a quantity of real estate used therewith, and in
   addition a tract of 960 acres connected with a waterfall
   which would be likely to prove useful in the future for
   lighting and power purposes, the 960-acre tract, which
   was not in use as a part of the plant for public lighting,
   etc., was not employed for public purposes within the
   meaning of the exemption statute (1 Comp. Laws 1915, §
   4001), and plaintiff city was not entitled to recover back
   a tax on the tract paid under protest.

Error to Grand Traverse; Mayne, J. Submitted
October 22, 1915. (Docket No. 89.) Decided March
30, 1916.

Assumpsit by the City of Traverse City against the
Township of East Bay for the recovery of taxes paid
under protest. Judgment for defendant. Plaintiff
brings error. Affirmed.

*Covell & Cross,* for appellant.

*Parm C. Gilbert,* for appellee.

BROOKE, J. This is a companion case to the case of
*City of Traverse City* v. *Township of Blair, ante,* 313
(157 N. W. 81), to which reference is made.

It appears that when the plaintiff city purchased
from the Queen City Electric Light & Power Company
its dam, power plant, and transmission line, located
in the township of Blair, it likewise purchased from
the said Queen City Company 960 acres of land located
in the defendant township of East Bay. Taxes amount-
ing to $119.51 for the year 1913 were assessed by the

defendant township against the said lands owned by the plaintiff city therein. These taxes were paid in due time, but under the following protest:

"Because the said above-described lands, and the buildings thereon, are owned by the said city of Traverse City, a municipal corporation, and are used for public purposes, and are exempt from taxation under the laws of the State of Michigan, and said taxes and assessments are illegal and void."

Thereafter plaintiff brought this action against the defendant township to recover the amount of the taxes so paid. It is the contention of the plaintiff that said lands in the hands of the plaintiff are exempt from taxation under subsection 3 of section 7 of Act No. 174, Pub. Acts 1911 (1 Comp. Laws 1915, § 4001), which is as follows:

"The following  *  *  *  property shall be exempt from taxation.  *  *  *  *Third,* lands owned by any county, township, city, village or school district and buildings thereon, used for public purposes."

At the hearing, which was had before the court without a jury, in referring to the lands in question, counsel for the plaintiff said:

"It is not being used, we admit that it is undeveloped now, but being held for the purpose of future development—of developing additional power in the future, the same as it was held by the predecessor of the city, with that in view, we don't claim that it is part of the present plant, but simply land that is held with a view of developing additional power when the city needs it. There is a good waterfall there, and we expect to develop it or use it when the business of the city demands it. We hold this as a reserve and we claim it as exempt; and, when developed, it will all be used together, but nothing at all has been done yet toward developing it."

Mr. Crotser, one of the commissioners of the plaintiff city, gave testimony to the effect that the plant

located in the township of Blair produced, or was capable of producing, power considerably in excess of the present demands therefor. He testified that of the power used in the city about 30 per cent. was used for city lighting, while 70 per cent. was sold to inhabitants of the plaintiff city. He further testified that the municipal plant had only about one-third of the commercial business of the city, the other two-thirds being in the hands of a competing private company. He stated that the lands in the township of East Bay were practically valueless, except for power purposes, and that they were in the hands of the city at present undeveloped, as they had been in the hands of the Queen City Company prior to the sale to the city. He further testified:

"*Q.* There has been no attempt on the part of that former company or the city to improve or change the natural conditions of it?

"*A.* No; no change.

"*Q.* And it was purchased in the first place and is held now purely as a prospective site or for future use as may be needed?

"*A.* Yes, sir; that is how it is held.

"*Q.* So at this time there is no special use being made of it?

"*A.* No immediate use. * * *

"*Q.* Do you know whether the city officials have anything in view looking toward the development of that?

"*A.* It has been talked over by the commission a good many different times in their committee meetings, but it never has resulted in any definite plans for construction, not definite plans for putting it before the people or getting it in shape so it could be done."

He further testified:

"*Q.* The plant, now, has been able to furnish all the power and light that has been called for?

"*A.* Yes; we have had all the power that anybody has wanted up till this time.

"*Q.* So that this upper property in East Bay is

purely a matter of prospective or future use as occasion may require?

"*A.* Mr. Gilbert, you understand that the city property or the city lighting plant has not over one-third of the business of the city?

"*Q.* I know that would be true; if it would be a case where they got more business, then it would need more power?

"*A.* Yes, sir.

"*Q.* But according to the business it has now, the city plant has power enough?

"*A.* Yes; and it could carry considerable more than it has now."

The court rendered a verdict against the plaintiff upon the ground that electrical lighting and power plants owned by municipalities outside their corporate limits were not exempt from taxation in the municipality in which they are situated. That question we have determined adversely to the contention of the defendant in the companion case of the *City of Traverse City* v. *Township of Blair, supra.*

There remains, however, for determination the question whether this large tract of land purchased and owned by the plaintiff for the purpose of ultimate development as an adjunct to its plant located in the township of Blair is exempt from taxation under the statute quoted above, which provides for the exemption of all lands owned by a city *"used for public purposes."*

Can it be said in any proper sense, and within the meaning of the language of the statute, that these lands belonging to the plaintiff in the defendant township are "used for public purposes?"

The evidence above set forth distinctly negatives this proposition. The lands not only are not used for any public purpose, but they are not used for any purpose. They lie in a state of nature and no attempt has, to the present time, been made to utilize them for the

development of power, which is the only use of value that can be made of them.

The point is made by counsel for defendant that it is beyond the power of the plaintiff corporation, under the law, to purchase and own the lands in question. It is unnecessary to consider or determine that question. It is sufficient to say that, assuming the power of the plaintiff to legally acquire the lands, we are of opinion that the use which warrants exemption mentioned in the statute is a present use, and not an indefinite prospective use.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.